IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FAIR GAMING ADVOCATES GEORGIA INC., <br><br> Plaintiff, <br><br> v. <br><br> VGW HOLDINGS LIMITED, et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:24-CV-00901-TWT |

### OPINION AND ORDER

This is a putative class action case. It is before the Court on the Defendants' Motion to Compel Arbitration [Doc. 5] and Motion to Dismiss [Doc. 6], and the Plaintiff's Motion to Remand [Doc. 15], and Motion for Leave to File Supplemental Authority [Doc. 23]. For the reasons set forth below, the Defendants' Motion to Compel Arbitration [Doc. 5] is DENIED as moot and their Motion to Dismiss [Doc. 6] is GRANTED for lack of personal jurisdiction. The Plaintiff's Motion for Leave to File Supplemental Authority [Doc. 23] is GRANTED and its Motion to Remand [Doc. 15] is DENIED.

### I. Background

This case arises from the Defendants' operation of certain internet-based, casino-themed online games. (Compl. ¶¶ 12-13). The Plaintiff, a corporation, claims that the games violate a Georgia law that prohibits casino gambling and seeks recovery of the losses Georgia citizens sustained playing the games for a period of four years prior to the filing of the Complaint,

excluding the six months immediately preceding that filing. (*Id.* ¶¶ 14-16, 61, 85-86, 90 & at 38-39). The law provides that:

> Money paid or property delivered upon a gambling consideration may be recovered from the winner by the loser by institution of an action for the same within six months after the loss and, after the expiration of that time, by institution of an action by any person, at any time within four years, for the joint use of himself and the educational fund of the county.

O.C.G.A. § 13-8-3(b). As relevant to the present motions, the Plaintiff alleges that the Defendants' casino gaming websites were accessible to Georgians via the internet. (*Id.* ¶ 19). The Defendants do not have any offices or employees in Georgia except for two, non-executive employees who live in Georgia and work remotely. (Thunder Decl. II [Doc. 6-2] ¶ 7).

The Plaintiff originally filed this action in the Superior Court of Fulton County and the Defendants removed the action to this Court on February 28, 2024. (Not. of Removal). The Defendants have moved to compel arbitration and to dismiss for lack of personal jurisdiction and failure to state a claim. [Docs. 5, 6]. The Plaintiff has moved to remand this action to the Superior Court of Fulton County. [Doc. 15].

## II. Legal Standards

Federal courts are courts of limited jurisdiction; they may only hear cases that the Constitution and Congress have authorized them to hear. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An action originally brought in state court may be removed by a defendant to federal

court when the action satisfies the constitutional and statutory requirements for original federal jurisdiction. *See* 28 U.S.C. § 1441(a). Because of the limited authority of federal courts, "removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of remand." *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). When no federal question exists, diversity jurisdiction can be invoked where there is complete diversity among the parties and the amount in controversy exceeds $75,000 under 28 U.S.C. 1332(a), or where the class action jurisdictional standards are met under 28 U.S.C. 1332(d).

On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie case by presenting enough evidence to withstand a motion for directed verdict." *United States ex rel. Bibby v. Mortgage Invs. Corp.*, 987 F.3d 1340, 1356 (11th Cir. 2021). In evaluating a plaintiff's case, "[t]he district court must construe the allegations in the complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition testimony." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). Where the defendant contests the allegations in the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447

3

F.3d 1357, 1360 (11th Cir. 2006). "And where the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must draw all reasonable inferences in the plaintiff's favor." *Mortgage Invs.*, 987 F.3d at 1356 (quotation marks omitted).

### III. Discussion

#### A. Remand[1]

The Plaintiff moves to remand this action on the ground that the Court lacks subject matter jurisdiction over its claims, first because it has not suffered an injury in fact. (Pl.'s Mot. to Remand, at 4-6). Second, the Plaintiff asserts that the Defendants have argued in their Motion to Dismiss that the Plaintiff is permitted to sue only for one Georgia resident's gambling losses and that the Defendants failed to submit evidence showing that a single Georgia resident lost or spent more than $75,000 playing the Defendants' online games. (*Id.* at 6-9).[2]

The Defendants respond that the amount in controversy requirement is plainly satisfied, as evidenced by a declaration they submitted of Defendant VGW Holdings Ltd.'s general counsel that the amount of in-game expenditures

---

[1] The Plaintiff has also moved for leave to file a notice of supplemental authority in conjunction with its Motion to Remand. [Doc. 23]. The Motion is unopposed and will be granted.

[2] The Plaintiff also raises this argument in its response to the Defendants' Motion to Dismiss. (*See* Pl.'s Resp. in Opp. to Mot. to Dismiss, at 18-21). For ease of organization, the Court will address that argument in conjunction with its analysis of the Plaintiff's Motion to Remand.

4

by Georgia players during the relevant time period exceeds $150,000. (Defs.' Resp. in Opp. to Mot. to Remand, at 6); (Thunder Decl. I [Doc. 1-1] ¶¶ 11-13). In response to the Plaintiff's challenge to the Defendants' Motion to Dismiss arguments, the Defendants assert that courts only consider the amount a plaintiff has placed in controversy without regard to whether the plaintiff is likely to recover that amount. (*Id.* at 6-7). To the extent the Plaintiff asserts that the Defendants argued in their Motion to Dismiss that the Plaintiff lacks Article III standing, the Defendants contend that they did not raise such an argument. (*Id.* at 8-10).

While neither party disputes that the parties here are diverse, the Court confirms that diversity exists here. The Plaintiff is a Georgia corporation with its principal place of business in Georgia, VGW Holdings is an Australian company with its principal place of business there, VGW Luckyland is a Delaware corporation with its principal place of business there, and VGW Malta and VGW GP are Maltese companies with their principal places of business in Malta and with Australian membership. (*See* Not. of Removal ¶¶ 14-23). The Court also finds the amount in controversy requirement to be met here. In its Complaint, the Plaintiff alleges that it seeks recovery of "the monetary losses incurred by citizens of the state of Georgia for the last 4 years, excepting the 6 months immediately preceding the filing of this complaint." (Compl. at 38-39). The Defendants submitted evidence that, based on their

5

records, that amount exceeds $150,000, and the Plaintiff has not rebutted that figure. (Thunder Decl. I ¶¶ 11-13).

As to the Plaintiff's argument regarding the Defendants' challenge in their Motion to Dismiss to the Plaintiff's ability to pursue a mass recovery action, the amount in controversy inquiry does not take into consideration the amounts the Plaintiff is likely to recover or arguments to that end. *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) ("[T]he plaintiffs' likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." (quotation marks and citation omitted)). This is because the amount in controversy inquiry "focuses on how much is in controversy at the time of removal, not later." *Id.* Therefore, the Defendants' evidence that the amount the Plaintiff seeks to recover exceeds $150,000 is sufficient to establish that the amount in controversy requirement is satisfied here. *See* 28 U.S.C. § 1332(a), 1441(a). Finally, the Plaintiff's arguments as to the Defendants' Motion to Dismiss regarding standing are misplaced. As the Defendants concede, they have not raised a standing argument. Instead, the Defendants' argument goes to considerations of fairness to the parties in exercising personal jurisdiction over the Defendants and may go to the Plaintiff's ability to state a claim under O.C.G.A. § 13-8-3(b), neither of which are relevant to the question of whether

6

this action was properly removed to this Court. Therefore, because the Court has original diversity jurisdiction over this action, *see* 28 U.S.C. § 1441(a), it was properly removed to this Court and the Plaintiff's Motion to Remand [Doc. 15] will be denied.

### B. Motion to Dismiss

The Defendants move to dismiss this action under Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure. In short, they argue under Rule 12(b)(2) that the Court lacks personal jurisdiction over them because they are not Georgia residents, and they lack sufficient minimum contacts with the state to be considered "at home" here. (Def.'s Mot. to Dismiss, at 5-7). As to specific jurisdiction, the Defendants argue that they have not "purposefully availed themselves of the privilege of conducting business in Georgia" and that considerations of fairness and justice weigh against a finding of personal jurisdiction. (*Id.* at 7-15). Under Rule 12(b)(6), they argue that even if the Court does have personal jurisdiction over them, the Plaintiff fails to state its claim under O.C.G.A. § 13-8-3(b) because that statute does not grant the Plaintiff a mass right of recovery for the alleged gambling losses of every Georgia user of the Defendants' websites. (*Id.* at 15-23).

The Plaintiff responds that the Court has specific jurisdiction over the Defendants because they "conduc[t]ed illegal business in Georgia on a 'regular, continuous, [and] systematic basis' . . . and due process requirements have been

7

met." (Pl.'s Resp. in Opp. to Mot. to Dismiss, at 3-4). The Plaintiff also argues that the Defendants have two non-executive employees who live and work in Georgia and that, with the addition of an interactive website that allowed them to profit off Georgia residents, the Court can exercise general personal jurisdiction over the Defendants. (*Id.* at 4-7). Finally, the Plaintiff contends that O.C.G.A § 13-8-3(b) does permit a mass recovery action for alleged gambling losses. (*Id.* at 8-18). The Court begins and ends its analysis with the Defendants' personal jurisdiction challenge.

A federal court sitting in diversity undertakes a two-step inquiry to determine whether it has personal jurisdiction over a nonresident defendant: "the exercise of jurisdiction must (1) be appropriate under the forum state's long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257-58 (11th Cir. 2010). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Id.* at 1258 (quotation marks omitted). Thus, this Court must interpret and apply Georgia's long-arm statute in the same manner as the Georgia Supreme Court. The statute, codified at O.C.G.A. § 9-10-91, confers specific personal jurisdiction over an out-of-state defendant if, among other things, he "[t]ransacts any business within [Georgia][.]" O.C.G.A. § 9-10-91(1);

*see also Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 429 (2021). "[J]urisdiction exists on the basis of transacting business in [Georgia] if (1) the nonresident defendant has purposefully done some act or consummated some transaction in this state, (2) if the cause of action arises from or is connected with such act or transaction, and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice." *Amerireach.com v. Walker*, 290 Ga. 261, 269 (2011) (citation omitted). However, "it is essential in each case that there be some act by which the defendant purposefully avails [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 518 (2006).

If a state's long-arm statute is satisfied, the next step is to assess personal jurisdiction under constitutional due process principles. A court may exercise either general or specific jurisdiction over an individual not domiciled in the state: "[g]eneral jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated, while specific jurisdiction is founded on a party's activities in the forum that are related to the cause of action alleged in the complaint[.]" *Stubbs*, 447 F.3d at 1360 n. 3 (citation omitted). Under either scenario, a court must ensure that "the defendant has 'certain minimum contacts with the state such that the maintenance of the suit does not offend traditional notions of fair play and

9

substantial justice.'" *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (alteration and quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

As an initial matter, the Plaintiff alleges only O.C.G.A § 9-10-91(1) as the basis for personal jurisdiction under the Georgia long-arm statute, so the Court will not address the other prongs of that statute. (*See* Pl.'s Resp. in Opp. to Mot. to Dismiss, at 3-4). The Court will first address the applicability of Georgia's long-arm statute before turning to the due process considerations.

### 1. Georgia Long-Arm Statute

As the Court reads the Complaint and the Plaintiff's response to the Motion to Dismiss, the Plaintiff's only alleged theories of personal jurisdiction over the Defendants are (1) that the Defendant VGW Holdings Limited, "along with its [Defendant] subsidiary companies, actively operate and market internet gambling websites within the State of Georgia . . ."; (2) the Defendants conduct "illegal business in Georgia on a regular, continuous, [and] systematic basis"; and (3) the Defendants have two, non-executive employees who live in

10

Georgia. (Compl. ¶¶ 2, 7); (Pl.'s Resp. in Opp. to Mot. to Dismiss, at 4-5). None of these allegations are sufficient to confer personal jurisdiction under the long-arm statute on the ground that the Defendants transacted business within the state. *See* O.C.G.A. § 9-10-91(1). Turning first to the third contention, the Plaintiff does not dispute that the Defendants are non-residents of Georgia but attempts to impute long-arm jurisdiction on them by virtue of two employees who live in the state and work remotely. This contention circumvents the long-arm statute's requirement that "the nonresident defendant has purposefully done some act or consummated some transaction in this state" by imputing personal jurisdiction on the corporate defendants by virtue of their employees' residency in the state. *Aero Toy Store, LLC*, 279 Ga. App. at 517-18. Nor has the Plaintiff alleged any connection between the work of these two employees and its cause of action. *See Amerireach.com*, 290 Ga. at 269. Thus, the Court finds that the Defendants' employees' residency in the state is not sufficient to confer personal jurisdiction on the Defendants under the Georgia long-arm statute.

Second, the Complaint contains no factual allegations supporting the Plaintiff's contentions that the Defendants "actively operate and market internet gambling websites within the State of Georgia" and conduct "illegal business in Georgia on a regular, continuous, [and] systematic basis." (Compl. ¶¶ 2, 7). The Plaintiff has not alleged that the Defendants purposely directed

11

their activity into the state via marketing or otherwise sought out the business of Georgia residents other than conclusory statements that the Defendants "target" Georgia residents. (*See id.* ¶ 9). While Georgia does permit the assertion of long-arm jurisdiction based on business conducted over the internet, it has adopted the *Zippo*[3] sliding-scale test for gauging the "nature and quality of commercial activity that an entity conducts over the [i]nternet" in order to determine whether the defendant has transacted business in Georgia. *Pascarelli v. Koehler*, 346 Ga. App. 591, 594-95 (2018). In *Pascarelli*, the Georgia Court of Appeals explained that on one end of the *Zippo* sliding scale, "[a] passive [w]eb site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction." *Id.* at 595. On the other hand, and more akin to the casino gaming websites at issue here, "[t]he middle ground is occupied by interactive [w]eb sites where a user can exchange information with the host computer." *Id.* Here, the Defendants' websites are certainly interactive in that they invite the user to play the games in the hopes of winning virtual prizes. (*See*, e.g., Compl. ¶ 76). In *Pascarelli*, the Georgia Supreme Court noted that middle ground websites like the casino gaming websites at issue here and the hotel reservation system at issue there were distinguishable from cases

---

[3] *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

involving retail websites, where the buyer purchased a physical product through the website that the seller then shipped into Georgia. *Pascarelli*, 346 Ga. App. at 596. In holding that the hotel reservation website did not satisfy the long-arm statute's requirement for transacting business in Georgia, the Georgia Court of Appeals likewise noted that "the record contain[ed] no evidence showing that [the defendant] advertised or solicited business in Georgia." *Id.* at 597-98. So too, here. While the Defendants casino gaming websites were certainly accessible by Georgia users and the Defendants accepted payments from Georgia users in order to play the games, the Court finds this limited interaction, without more, insufficient to satisfy the transacting business prong in O.C.G.A § 9-10-91(1). Even if it were, the exercise of jurisdiction under the long-arm statute would offend traditional notions of fairness and substantial justice because the Defendants could not reasonably have expected to be haled into court in Georgia (or any state, for that matter), solely because their websites are interacted with by residents of the state. *See Aero Toy Store, LLC*, 279 Ga. App. at 519; *Waite*, 901 F.3d at 1312 (explaining that the minimum-contacts inquiry "ensures that a defendant is haled into court in a forum state based on the defendant's own affiliation with the state, rather than the 'random, fortuitous, or attenuated' contacts it makes by interacting with other persons affiliated with the state." (citation omitted)). The Court therefore concludes that the Defendants are not subject

13

to personal jurisdiction under the Georgia long-arm statute. *See* O.C.G.A § 9-10-91(1).

### 2. Due Process Concerns

Even if the Plaintiff had properly alleged a basis for personal jurisdiction over the Defendants under the long-arm statute, the exercise of jurisdiction would not comport with due process. First, the Defendants are not subject to general jurisdiction in Georgia because they are foreign companies that are neither incorporated here, have members that are incorporated here, nor maintain their principal places of business here. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017). Although a foreign company can be subject to general jurisdiction in a state where its "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State," *Daimler AG v. Bauman*, 571 U.S. 117, 138-39 (2014), the Defendants' affiliations with Georgia fail to satisfy this standard for the same reasons that the Defendants have not transacted business in Georgia within the meaning of the long-arm statute. Here, the Defendants contacts with the state appear to arise only via the residency of two of its employees and its acceptance of payments from Georgia residents who happen to use its website.

The Defendants are also not subject to specific jurisdiction in Georgia. Critical to the specific jurisdiction inquiry is the requirement that "the suit

must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.*, 582 U.S. at 262 (quotation marks, citations, and brackets omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* There is no such occurrence here. As explained previously, there are no allegations that the Plaintiff's claim arises out of the residency of the Defendants' two employees in Georgia, and there was no "occurrence" taking place in the state that ties into the Plaintiff's claim, either. At most, a contingent of Georgia residents happened to use and make purchases on the Defendants' casino gaming websites while residing in Georgia. But these contacts are more of the "random, fortuitous, or attenuated" variety than a result of the Defendants' own intentional affiliation with the state. *See Waite*, 901 F.3d at 1312. Therefore, the Court finds that even if the exercise of personal jurisdiction was proper under the Georgia long-arm statute, it would not comport with the mandates of due process. *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1257-58. Accordingly, because the Court cannot exercise personal jurisdiction over the Defendants, the Defendants' Motion to Dismiss [Doc. 6] will be granted. As a result, the Court need not address the parties' arguments under Rule 12(b)(6).

15

### C. Arbitration

Although the Eleventh Circuit has not explicitly addressed whether a district court can rule on a motion to compel arbitration in the absence of, or without determining the issue of, personal jurisdiction, the weight of the persuasive authority counsels the Court against doing so. *See Hines v. Stamos*, 111 F.4th 551, 560-61 (5th Cir. 2024) ("[T]he resolution of a motion to compel arbitration requires the court to 'apply its law-declaring power.' Thus, unlike other threshold issues, a court cannot rule on arbitrability without subject-matter and personal jurisdiction." (citations omitted)); *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 95-96 (3d. Cir. 2018). Therefore, the Defendants' Motion to Compel Arbitration [Doc. 5] will be denied as moot.

### IV. Conclusion

For the foregoing reasons, the Defendants' Motion to Compel Arbitration [Doc. 5] is DENIED as moot and their Motion to Dismiss [Doc. 6] is GRANTED for lack of personal jurisdiction. The Plaintiff's Motion for Leave to File Supplemental Authority [Doc. 23] is GRANTED and its Motion to Remand [Doc. 15] is DENIED. The Clerk is DIRECTED to enter judgment in favor of the Defendants, and to close the case.

SO ORDERED, this     13th     day of December, 2024.

*/s/ Thomas W. Thrash*
THOMAS W. THRASH, JR.
United States District Judge